UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

James Jackson,

                              Petitioner,                    **Hon. Hugh B. Scott**

                                                                     08CV29

                    v.

                                                                    **Report**
                                                                        **&**
                                                               **Recommendation**

James Morrissey,

                              Respondent.

_____

The petitioner, James Jackson ("Jackson"), seeks habeas corpus relief pursuant to 28 U.S.C. §2254.

## Background

The petitioner challenges his incarceration based upon the violation of his parole status. In 1983, Jackson was convicted in Kings County of second-degree robbery and second degree burglary. He was sentenced to concurrent sentences of from three to nine years imprisonment on each count. In 1986, he was paroled. In February of 1988, Jackson was declared to be in violation of the terms of his parole and returned to the New York State Department of Correctional Services (hereinafter "DOCS"). He again released on parole in April of 1988 (R. 73, 84-90)[1]. In October of 1989, police searched petitioner's apartment in connection with a murder

---

[1] References to "R." refer to the record on appeal filed in this matter on May 21, 2008.

investigation (R. 70).[2] On September 25, 1990, petitioner was convicted of Criminal Possession of a Controlled Substance in the Second Degree. He was sentenced, as a second felony offender, to a term of nine years to life imprisonment (R. 70). On October 8, 1998, Jackson was again paroled. Approximately six months later, on April 23, 1999, he was again declared in violation of his parole. Jackson was returned to parole supervision on September 21, 1999 (R. 85). On August 22, 2001, the petitioner was arrested after selling crack cocaine to an undercover police officer. On June 18, 2002, petitioner was again convicted of Criminal Possession of a Controlled Substance in the Fifth Degree (R. 85). He was sentenced as a second felony offender to a term of from two and one-half to five years imprisonment (R. 90).

Prior to petitioner's 2002 conviction, DOCS issued a Violation of Release Report stemming from his 2001 arrest. The September 17, 2001 report states that the petitioner had been in violation of his conditions of his release since August 22, 2001 by knowingly and unlawfully selling narcotics (R. 68). The record reflects that Jackson received the Notice of Violation on September 20, 2001; that he signed the acknowledgment of receipt of the Notice and checked the box indicating his waiver of a preliminary hearing (R. 77). On July 3, 2002, Jackson was returned to DOCS custody. That same day, DOCS issued a Notice of Final Declaration of Delinquency ["the Final Declaration"](R. 60). The declaration of delinquency informed Jackson that, based on his new conviction, the Board of Parole (hereinafter "Board") had declared him

---

[2] Jackson was a suspect in a murder discovered on October 14, 1989. A witness initially stated that she saw Jackson leaving the murder scene with a bloodied shirt. The witness, whose brother was involved in the murder, later stated that she fabricated the story about Jackson to protect her brother. She did state that Jackson provided the gun that her brother used for the killing. When the police searched Jackson's apartment, they found the gun and 322 vials of crack cocaine. Jackson was ultimately convicted of criminal possession of controlled substance. (R. 70).

delinquent as of August 22, 2001, and that the maximum expiration of his previous sentence, a life term, may be added to the maximum term of his later sentence (R. 60).[3]

On December 10, 2003, petitioner appeared before the Board to determine whether he was eligible for release to parole supervision. (Docket No. 13, Exhibit A). Discretionary parole was denied at that time.[4] On December 21, 2005, petitioner again appeared before the Board for a parole release hearing. At the hearing, the Board recited the details of petitioner's current term of incarceration, noting that petitioner was serving a term of from two and one-half to five years imprisonment on his 2002 sentence for Criminal Possession of a Controlled Substance in the Fifth Degree and that he had been denied parole at his initial appearance two years earlier (R. 49). The Board also noted that petitioner had been on parole when he committed his most recent offense and that, as a result, his prior life sentence for drug possession was still in effect (R. 49). The Board then asked, "Your prior term is 9 to life. That is back in play, do you understand

---

[3] The record includes a second version of the Notice of Final Declaration of Delinquency. (R. 34). The petitioner asserts that he received this copy on June 2, 2006 as a result of his efforts to obtain a copy of the Final Declaration from the Board. The Final Declaration which Jackson contends he received in 2006 is signed (R. 34), the other is not signed and is stamped "Parole Files" (R. 60). The content of the two notices is identical. The record is absent as to why two versions of the Final Declaration exist. The petitioner contends that the fact that two versions exist evidences that he was not served with a copy of the Final Declaration. (Docket No. 6 at pages 3-9).

[4] The Board concluded: "Parole denied. After personal interview and record review this panel concludes that if released at this time there is a reasonable probability that you would not live and remain at liberty without violating the law, and that your release at this time would be incompatible with the safety and welfare of the community. Your receipt of an earned eligibility certificate is duly noted, however, release is not warranted due to the following: the instant offense continues your long standing pattern of criminality spanning approximately 20 years. Previous convictions include assault, burglary, robbery and drugs. You were on lifetime parole at the time you committed this crime for a previous drug felony. Despite your good institutional record, we do not deem you worthy of a discretionary release at this time." (Docket No. 13, Exhibit A, page 2).

that?" Petitioner replied, "Yes sir." (R. 49). Indeed, Jackson referred to the fact that he had been sentenced to a term of "9 to Life" in connection with the 1990 conviction stemming from the fact that police discovered a gun, 332 vials of crack cocaine and $193,000 in his apartment. (R. 50).[5] The Board again denied parole, referring to the facts underlying Jackson's various convictions and stating that he has "had a continuing poor response to parole supervision and [his] actions severely impact public safety." The panel concluded that Jackson was "likely to re-offend when again at liberty," and thus, found that discretionary release was inappropriate. (R. 54; 57).

On August 1, 2006, petitioner filed a *pro se* state petition for a writ of habeas corpus in New York Supreme Court, Wayne County, arguing that the maximum term of his incarceration on his 2002 sentence would expire on August 17, 2006, and that he could not be held beyond that date on his prior life sentence, because he had not been given a copy of his final declaration of delinquency when he was returned to DOCS custody on July 3, 2002 (R.7). He claimed that his right to due process had been violated and that he was therefore subject to immediate release (R. 9-10). The respondent argued that petitioner was not subject to immediate release because his current sentence must run consecutively to his underlying sentence pursuant to Penal Law §§ 70.25 and 70.06, and because parole was revoked as a matter of law pursuant to Executive Law § 259-I [3][d][iii]. (Docket No. 13, Exhibit B). On August 22, 2006, the New York State Supreme Court, Wayne County summarily dismissed the petition (R. 5). Petitioner appealed to the Appellate Division, Fourth Department arguing that the lower court had erred in dismissing the state habeas petition because petitioner did not receive a final declaration of delinquency, as

---

[5] Jackson contends that the money belonged to his brother; he also denied possession of a gun. (R. 50-51).

4

required by Executive Law § 259-I [3][d][iii]. (Docket No. 13, Exhibit C). Upon appeal, Jackson acknowledged that he did receive a copy of the final declaration of delinquency on June 18, 2002, but argued that it was not "certified, time stamped, or marked as original." (Docket No. 13, Exhibit C, page 11). Petitioner further claimed that the copy he received was "signed by an individual other then the one who signed the case summary" and refers to the wrong indictment number. (Id).

On September 28, 2007, the Appellate Division, Fourth Department, unanimously affirmed the denial of the state habeas petition. People ex rel. Jackson v. Morrisey, 43 A.D.3d 1301 (4th Dept. 2007); (Docket No. 13, Exhibit F). The court "reject[ed] the contention of petitioner that he had a due process right to receive the final written declaration of delinquency when his parole was revoked and he was reincarcerated upon being charged with and convicted of the new crime." Jackson, 43 A.D3d at 1302. The court held that "[i]nherent in a new felony conviction is the fact that a parole violation was sustained. Upon his conviction of a new crime, petitioner's parole was automatically revoked by operation of law and respondent had a continuing, nondiscretionary, ministerial duty to recalculate the maximum expiration date of petitioner's sentence." Jackson, 43 A.D3d at 1302 (internal citations and quotations omitted).

On October 19, 2007, petitioner submitted a motion requesting leave to appeal to the New York Court of Appeals (Docket No. 13, Exhibit G). On December 18, 2007, the Court of Appeals denied petitioner's leave application. See People ex rel. Jackson v. Morrisey, 9 N.Y.3d 816 (2007) (Docket No. 13, Exhibit I).

In the instant petition, Jackson asserts that: (1) he was not declared delinquent under indictment 09322-2001; (2) he was denied his right to appeal his parole revocation; (3) his

computation sheet was changed; and (4) he served his term of imprisonment as of December 25, 2007. (Docket No. 1)

**Exhaustion**

In the interest of comity and in keeping with the requirements of 28 U.S.C. §2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. See <u>Ayala v. Speckard</u>, 89 F.3d 91 (2d Cir. 1996) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)); <u>Daye v. Attorney General of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984). A state prisoner seeking federal habeas corpus review must first exhaust his available state remedies with respect to each of the issues raised in the federal habeas petition. <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). To meet this requirement, the petitioner must have raised the question in a state court and put the state appellate court on notice that a federal constitutional claim was at issue. See <u>Grady v. Le Fevre</u>, 846 F.2d 862, 864 (2d Cir. 1988); <u>Petrucelli v. Coombe</u>, 735 F.2d 684, 688-89 (2d Cir.1984). A state court is deemed to have been put on notice of the federal constitutional nature of a claim if the petitioner: (1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to similar factual patterns; (3) asserted his claim "in terms so particular as to call to mind a specific right protected by the Constitution[;]" or (4) alleged patterns well within the mainstream of constitutional litigation. <u>Daye</u>, 696 F.2d at 194.

Each of the claims raised in the instant petition is based upon an alleged due process violation of some type. Although the petitioner asserted various due process deficiencies as the basis for the claims raised in the state court proceedings, some of the arguments supporting the

6

petitioner's claims in this action may not have been asserted in the state court. Notwithstanding questions as to whether each of the elements of the petitioner's claims have been fully exhausted, a decision on the merits is appropriate under 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." See also Mobley v. Senkowski, 2003 WL 22952846, *2 (E.D.N.Y. Nov. 12, 2003) (stating that under §2254 a district court may now, in its discretion, deny on the merits a habeas petition containing exhausted and unexhausted claims, referred to as a "mixed petition.") The Court has determined that a review of the merits pursuant to §2254 (b)(2) is warranted in this case.

**Standard of Review**

State court findings of historical facts, and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelley, 786 F.2d 536, 543 (2d Cir.) cert. denied, 479 U.S. 805 (1986); see also 28 U.S.C. § 2254(e)(1) (stating that "a determination of a factual issue made by a State court shall be presumed to be correct."). As amended by the Antiterrorism and Effective Death Penalty Act of 1996[6] ("AEDPA"), § 2254(d) of Title 28 provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[6]A ntiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to findings both by state trial courts and by state appellate courts. Smith v. Sullivan, 1998 WL 156668 (W.D.N.Y. 1998) (Larimer, C.J.); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert denied, 490 U.S. 1059 (1989).

In enacting AEDPA, Congress intended to heighten the deference given to state court determinations of law and fact. As noted in Smith, AEDPA has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court decision was defective in some way." Smith, 1998 WL 156669 at *3. AEDPA "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir. 1997) (quoting Emerson v. Gramley, 91 F.3d 898, 900 (7th Cir. 1996) cert. denied, 520 U.S. 1122 (1997)); see also Houchin v. Zavaros, 107 F.3d 1465, 1470 (10th Cir. 1997) (AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusions.)

## DISCUSSION

**Statute of Limitations**

AEDPA imposes a one-year statute of limitations on the filing of habeas petitions in

federal court. 28 U.S.C. § 2244(d)(1). Pursuant to that provision, the petitioner has one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file a petition in federal court. Id. This statute of limitations may be tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending", 28 U.S.C. § 2244(d)(2), but such filings do "not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.2000); see also Scales v. N. Y. Division of Parole, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005). The Second Circuit has held that the limitations period begins to run when the petitioner is notified that the administrative decision to revoke his parole became final. Cook v. New York State Division of Parole, 321 F.3d 274, 280 (2d. Cir. 2003) (limitations period applied to habeas petition challenging parole revocation; period began to run when petitioner is notified that the administrative decision to revoke parole became final).

In the instant case, a Final Declaration was issued by the Board on July 3, 2002. (R. 60). The petitioner contends that he did not receive the Final Declaration. [7] There is a presumption of regularity that properly mailed letters are received. *See e.g.* Osele v. United States Atty. Gen., 190 Fed. Appx. 96, 97 (2d Cir.2006) (a "properly addressed piece of mail placed in the care of the Postal Service is presumed to have been delivered"); Hoffenberg v. C.I.R., 905 F.2d 665, 666 (2d Cir.1990) (same). "[D]enial of receipt of notice, without more, is insufficient to rebut the

---

[7] The respondent notes that counsel for the petitioner stated that Jackson received a copy of the Final Declaration of Delinquency on June 18, 2002. (Docket No. 13, Exhibit C, page 11). It is unclear as to whether this was a typographical error on the part of the petitioner's counsel inasmuch as the Final Declaration of Delinquency was not issued until July 3, 2002.

presumption that notice was properly delivered through the mail." Orix Financial Services v. Phipps, 2009 WL 30263, at *11 (S.D.N.Y. Jan.6, 2009) (citing Meckel v. Continental Resources Co., 758 F.2d 811, 817-18 (2d Cir.1985)). The record does reflect that Jackson received the initial Notice of Violation on September 20, 2001 (R. 77). Further, the record reflects that Jackson was aware that his prior sentence of nine years to life had been reinstated prior to December 21, 2005. During an appearance before the Board on that date Jackson was asked: "Your prior term is 9 to life. That is back in play, do you understand that?" To which the petitioner replied: "Yes, sir." (R. 49). The petitioner points to the existence of two versions of the Final Declaration, one signed and one un-signed but otherwise containing identical content, as proof that he did not receive the document. The existence of the two documents in this case is not sufficient to rebut the presumption of regularity.

The petitioner did not institute any legal proceeding relating to the reinstatement of his prior sentence until he filed a state court habeas petition on August 1, 2006[8] – over four years after the Final Declaration was issued. Thus, even allowing for a reasonable period for the July 3, 2002 Final Declaration to have reached Jackson through the mail, and applying the presumption of regularity, the petitioner failed to take any action within the one-year statute of

---

[8] The one-year statute of limitations may be tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending", 28 U.S.C. § 2244(d)(2), but such filings do "not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.2000). Because the one-year period had already run when Jackson filed his state court habeas petition, the filing of that petition does not act to reset the limitations period. Id.; Pettiford v. Graham, 2009 WL 920342, 6 (S.D.N.Y.,2009).

limitations period.[9]

Even if the Court were to determine that the presumption of regularity did not apply in this case and that the claims in the petition were not barred by the statute of limitations, as discussed below, the petition should be denied.

**DUE PROCESS CLAIMS**

The petitioner's claims revolve around his contention that his parole was never properly revoked because he asserts that he never received a copy of the Final Declaration. In Morrissey v. Brewer, 408 U.S. 471, 482 (1972), the Supreme Court held that the requirements of due process apply to the revocation of parole. The Court established two criteria with regard to the process that is due. First, there must be a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Id. at 485. Second, there must be a revocation hearing, if desired by the parolee, that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must

---

[9] Although, under certain circumstances, a court may invoke equitable tolling to defeat a limitations defense. However, this is proper only in the rare and exceptional circumstance. To meet this standard, petitioner must show that his failure to make a timely filing was the result of "extraordinary circumstances", which could not be overcome despite his reasonably diligent efforts to do so. See, e.g., Belot v. Burge, 490 F.3d 201, 204 (2d Cir.2007); Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir.2001). A petitioner's *pro se* status, nor his ignorance, does not alone warrant equitable tolling. Smith, 208 F.3d at 17; Pettiford, 2009 WL 920342 at *6. Jackson's petition does not allege that his efforts were hindered by "extraordinary circumstances." The record does not reflect any basis to apply equitable tolling in this case.

have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488.

In the instant case, Jackson was afforded an opportunity for a preliminary hearing but waived his right to that hearing. (R. 77). Jackson was not provided a final hearing because, under New York law, Jackson's conviction on new felony charges automatically required revocation of Jackson's parole. See Executive Law § 259(i)(3)(d)(iii), which provides, in pertinent part, that "when a parolee ... has been convicted of a new felony committed while under his present parole ... and a new indeterminate sentence has been imposed, the board's rules shall provide for a final declaration of delinquency." Under such circumstances, due process does not require a final hearing. In Alveras v. Neubert, 727 F.Supp. 852 (S.D.N.Y.1990), the Court discussed the import of the Morrissey decision in light of New York's Executive Law provisions. Speaking of the requirements in Morrissey, the Court held:

> Those requirements were set forth in the context of parolees suffering revocation based on charges made by their parole officers, and theretofore not established as true by any court or administrative body. In Black v. Romano, 471 U.S. 606 (1985), ... the Court stated that Morrissey did not consider the hearing requirements of "a revocation proceeding in which the fact finder was required by law to order incarceration upon finding that the defendant had violated a condition of ... parole ... Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue ... parole."

Alveras, 727 F.Supp. at 853.

Because revocation is based upon a conviction on new felony charges, "the requirements

of establishing probable cause and then an actual violation of parole have been satisfied by the [individual's] convictions. The requirement that [he] have an opportunity to show 'that circumstances in mitigation suggest that the violation does not warrant revocation,' [as set out in Morrissey] has been made unnecessary by the New York State Legislature's determination that revocation should be automatic when the parolee is convicted of a felony while on conditional release." Alveras, 727 F.Supp. at 853. Under these circumstances, there is no need to conduct a final hearing. Keyes v. Juul, 270 F.Supp.2d 327, 329 (E.D.N.Y.,2003)(Where, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing to protect a parolee's due process rights by determining if the parolee has in fact "violated one or more of the conditions of release in an important respect" evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waived by his plea of guilty). These statutory provisions have withstood constitutional challenge. See Alveras, 727 F.Supp. at 853 ("[t]here is nothing constitutionally improper in the Legislature's determination."); People ex rel. Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971) ("The conviction of another crime ... is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary."); Pickens v. Butler, 814 F.2d 237, 239 (5th Cir.1987) ("Morrissey did not hold that a state is prohibited from declaring that parole will be automatically revoked for serious violations such as conviction of a felony.")); People ex rel. Harris v. Sullivan, 74 N.Y.2d 305, 308 (1989)(Under New York Law, a parolee convicted of committing a new felony and sentenced to an indeterminate term of imprisonment is not entitled to a final revocation hearing because they are subject to revocation of parole by operation of law without any hearing.).

The claims in the petition are not clearly stated. In Ground One of the petition, Jackson

13

contends that he "was not declared delinquent upon his conviction under his present parole status under indictment #09322-2001."[10] The record clearly demonstrates that Jackson was convicted of a new felony in 2002, which was committed while he was on parole stemming from his 1990 conviction. (R. 70-71). In his 2005 parole hearings, Jackson has admitted these facts. (R. 49). He does not dispute that he received a Violation of Release Report in 2001 stating that he violated the conditions of his release by, among other things, knowingly and unlawfully selling narcotics (R. 68); that he was also issued a Notice of Violation of Parole on September 20, 2001; or that he signed the violation notices and waived a preliminary hearing (R. 77). Jackson does not offer any evidence, besides his own self-serving allegations, to support his claim that he did not receive notice. The record reflects that copies of the Final Declaration which have been maintained by the Division of Parole indicate that the notice was issued to petitioner on July 3, 2002, the day he was returned to DOCS custody following his conviction (R. 60). The petitioner was not a novice to the criminal justice system or to the workings of the Division of Parole. Indeed, the record reflects that Jackson had been paroled, declared delinquent, and re-paroled at least three times prior to the last revocation of his parole in 2002. (R. 84-85).

As noted above, Jackson has not rebutted the presumption of regularity suggesting that he received a copy of the Final Declaration. Notwithstanding, to the extent that Jackson is contending that his due process rights have been violated because he allegedly did not receive a

---

[10] The petitioner appears to argue that there was some discrepancy with respect to the indictment number listed on documents relating to his being found delinquent and the indictment number underlying his 2002 conviction. Jackson points to no legal authority in support of this theory. Inasmuch as the Final Declaration does not appear to refer to (or even have a line for) an indictment number (R. 60), this argument appears specious.

copy of the Final Declaration, the petition should be denied. The petitioner raised this claim in his state court habeas petition. The petition was rejected by the New York State Supreme Court, Wayne County (R. 5) and upon appeal by the Appellate Division, Fourth Department. The Fourth Department held:

> We reject the contention of petitioner that he had a due process right to receive the final written declaration of delinquency when his parole was revoked and he was reincarcerated upon being charged with and convicted of the new crime (see Morrissey v Brewer, 408 US 471, 490 [1972]; see also People ex rel. Harris v Sullivan, 74 NY2d 305, 310 [1989]). "Inherent in a new felony conviction is the fact that a parole violation was sustained" (Matter of O'Quinn v New York State Bd. of Parole, 132 Misc 2d 92, 95 [1986]). Upon his conviction of a new crime, petitioner's parole was automatically revoked by operation of law (see Matter of Thompson v New York State Div. of Parole, 171 AD2d 909 [1991]), and respondent had "a continuing, nondiscretionary, ministerial duty" to recalculate the maximum expiration date of petitioner's sentence (People ex rel. Melendez v Bennett, 291 AD2d 590, 591 [2002], lv denied 98 NY2d 602 [2002]; see Matter of Cruz v New York State Dept. of Correctional Srvs., 288 AD2d 572, 573 [2001], appeal dismissed 97 NY2d 725 [2002]).

People ex rel. Jackson v. Morrissey, 43 A.D.3d 1301, 1301-1302 (4th Dept. 2007).[11] Habeas corpus relief is unavailable inasmuch as the Supreme Court has not determined that the failure to serve a copy of the Final Declaration upon an individual whose parole was automatically statutorily revoked due to a new felony conviction violates the individual's due process rights.

---

[11] Several New York courts have held that lack of official notice or a delay in receiving notice of the final declaration of delinquency does not, by itself, constitute prejudice. See People ex rel. Ward v. Russi, 219 A.D.2d 862 (4 Dept. 1995) (state habeas corpus relief not available because of delay in issuing final declaration of delinquency); Thompson v. Div. of Parole, 171 A.D.2d 909 (3d Dept. 1991) (lack of "official" notification that his parole was revoked did not prejudice petitioner); People ex rel. Morgan v. Stancari, 143 A.D.2d 960 (2d Dept. 1988) (no merit to claim that petitioner was denied due process because he did not receive timely notice of his parole revocation).

The petitioner also argues that his continued incarceration upon his sentence from the 1990 conviction amounts to an "administratively" added or enhanced prison term. (Docket No. 44[12] at unnumbered page 5). This argument lacks merit. It is undisputed that Jackson was sentenced to 9 years to life imprisonment as a result of his 1990 conviction. Thus, his incarceration upon this judicially imposed sentence due to the statutory revocation of his parole status does not constitute an improper administratively imposed sentence. Inasmuch as this state court determination is neither contrary to, nor based on an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, the application for habeas corpus relief based upon this argument should be denied.

In Ground Two, Jackson states that he was denied his right to appeal his parole revocation. (Docket No. 1 at page 5). Once again, the petitioner has failed to rebut the presumption of regularity which implies that he received the July 3, 2002 Final Declaration. Thus, the record does not support his contention that he was denied an opportunity to appeal the revocation of his parole. Moreover, the petitioner does not articulate a basis for an appeal of the revocation inasmuch as the revocation was non-discretionary, and instead, mandated by statute. Jackson does not dispute or challenge his 1990 conviction or the sentence of 9 years to life imposed as a result of that sentence. Further, he does not challenge his 2002 conviction and that an indeterminate sentence was imposed upon that conviction. The petitioner does not dispute

---

[12] Docket No. 44 was entitled "One Reply" and was filed consistent with this Court's Order (Docket No. 39). Although the document was not filed as a motion, the content of the document seeks summary judgment on behalf of the petitioner. To the extent that this document may be considered a motion, for the reasons set forth herein, it is recommended that the motion be denied.

that he was on parole from the 1990 conviction at the time of the 2002 conviction. Jackson does not even challenge the fact that New York law requires automatic revocation of parole upon conviction of a new felony committed while on parole. Indeed, Jackson fails to identify any basis upon which to seek appeal of the revocation in light of his 2002 conviction. In Ground Three, Jackson points to alleged discrepancies in his sentence computation sheet issued in 2002.[13] Jackson appears to argue that the 2002 "computation sheet" only states that he was sentenced for one crime with a sentence of 2½ to 6 years. The petitioner has failed to articulate a claim of constitutional import in this ground. In Ground Four,[14] Jackson appears to contend that because he had been assigned a "max out" date in connection with the sentence on his 2002 conviction, the Board could not pursue the August 22, 2001 violation. (Docket No. 1 at page 6). The petitioner fails to articulate any authority for such a position, which appears to ignore the fact that his parole status was automatically revoked pursuant to §259 of the New York State Executive Law. These claims fail to raise issues of constitutional magnitude.

In sum, the petitioner has failed to articulate a basis for habeas corpus relief.

---

[13] Ground three of the petition states: "Petitioner computation sheet dated 7/3/2002 is calculation petitioner's term of imprisonment the date in which the maximum term. Ulster Correctional Facility ... date 7/3/2002 NYSD 4429072 Parole eligibility date 2/13/2004 Parole Hearing date / Type initial 12/2003. Maximum Expiration Date 8/17/2006 Conditional Release date 12/17/2004. T.A.C. date / Type initial 8/2004. Petition was sentence to one crime AGGREGATE TERM 002 06 00 to 005 00 00 years. Petitioner computation sheet was changed 12/23/2005."

[14] Ground Four reads: Time served as of 12/23/2005 last comp ... update. Reappearance date 12/2007 earliest release date 12/28/2007. Petitioner has no din number in the department of correction 02-R-3405 has max out on August 17, 2006. Petitioner's jurisdictional argument is that parole was not entitled to pursue a August 22, 2001 claim that petitioner had violated his parole release status."

## Conclusion

Based on the above, it is recommended that the petition for habeas corpus be denied in its entirety.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v.

Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
July 28, 2009